IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN O. FRINK, JR., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 07-530 SLR |
| | ) | |
| THOMAS MACLEISH, individually, | ) | |
| MARK W. SEIFERT, individually, | ) | |
| JOSEPH A. PAPILI, individually, | ) | |
| ANDREW J. HUDAK, individually, | ) | |
| STEVEN T. RIZZO, individually, | ) | |
| JOHN P. FORESTER, individually, | ) | |
| THOMAS E. GREEN, individually, | ) | |
| NATE MCQUEEN, individually. | ) | |
| | ) | |
| Defendants. | ) | |

OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT
FILED BY DEFENDANTS THOMAS MACLEISH, MARK W. SEIFERT,
JOSEPH A. PAPILI AND NATE MCQUEEN

DEPARTMENT OF JUSTICE
STATE OF DELAWARE

STEPHANI J. BALLARD, I.D. #3481
Deputy Attorney General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400

DATED:  April 25, 2008           Attorney for Defendants

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS ................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

STATEMENT OF FACTS ................................................................................. 3

ARGUMENT ................................................................................................. 5

    STANDARD OF REVIEW ........................................................................... 5

I.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS TO THE MOVING DELAWARE STATE POLICE SUPERVISORY DEFENDANTS, AS THE COMPLAINT, ON ITS FACE, FAILS TO STATE ANY CAUSE OF ACTION AGAINST THEM UNDER 42 U.S.C. §1983 ........................................................... 6

    A.  The Supervisory Defendants had no personal involvement in the acts complained of........................................................................................... 6

    B.  There is no *respondeat superior* liability on the Supervisory Defendants. ....... 8

    C.  Plaintiff fails to state a claim for wrongful "practices and policies" which is a theory of municipal liability which cannot be maintained against State officials as a matter of law, by virtue of the Eleventh Amendment ................ 10

    D.  Plaintiff's Complaint fails, on its face, to state a claim for "conspiracy" against any State Defendant........................................................................ 12

II.  PLAINTIFF'S COMPLAINT DOES NOT STATE A CLAIM AGAINST THE MOVING DEFENDANTS FOR ANY VIOLATION OF THE DELAWARE CONSTITUTION, WHEN THESE ALLEGATIONS ARE PREMISED UPON THE SAME FACTS AS ARE PLAINTIFF'S FEDERAL CONSTITUIONAL CLAIMS. 16

CONCLUSION.............................................................................................. 17

## TABLE OF CITATIONS

**Case Name**                                                                          **Page**

Adams v. Teamsters Local 115, 2007 WL 142540 (3d Cir. 2007)..............................13,14

Angola v. Civiletti, 666 F.2d 1 (2d Cir. 1981)....................................................................12

Baker v. Morgan, 2006 WL 1214808 (E.D. Pa. 2002) .....................................................15

Baylis v. Taylor, __ F.Supp. 2d ___, 2007 WL 590594 (D.Del 2007)...............................5

Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002) .............................................................6,9

Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75 (3d Cir. 1980)....................................7

Brathwaite v. Carroll, 2006 WL 839385 (D.Del. 2006) .................................................7, 9

Burgess v. Burgess, 1993 WL 149995 (N.D. Cal. 1993)..............................................12, 13

Carswell v. Borough of Homestead, 381 F.3d 235 (3d Cir. 2004) ...............................6, 11

City of Canton, Ohio v. Harris, 489 U.S. 378 (1989) ......................................................11

Daniels v. Williams, 474 U.S. 327 (1986) ..........................................................................6

Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005)....................................................... 6-9, 12

Hampton v. Hanrahan, 600 F.2d 600 (7th Cir. 1979), *overruled on other grounds*,
    446 U.S. 754 (1979)......................................................................................................13

Hanrahan v. Hampton, 446 U.S. 754 (1979) ....................................................................13

Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968 (8th Cir. 1968),
    *cert. denied*, 395 U.S. 961 (1969)...............................................................................5

Hunter v. Bryant, 502 U.S. 224 (1991)...............................................................................6

Kost v. Kozakierwicz, 1 F.3d 176 (3d Cir. 1993)................................................................5

Melo v. Hafer, 912 F.2d 628 (3d Cir. 1990) .....................................................................13

Mitchell v. Forsyth, 472 U.S. 511 (1985)............................................................................6

Monell v. Department of Social Services, 436 U.S. 658 (1978) ...............................8,10,11

Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir. 1997) ...............................5

Parratt v. Taylor, 451 U.S. 527 (1981) ........................................................................6,8

Pauling v. McElroy, 278 F.2d 252 (D.C. Cir. 1960),
    *cert. denied*, 364 U.S. 835 (1960) ...........................................................................5

Rode v. Dellaciprete, 845 F.2d 1195 (3d Cir. 1988)........................................................ 6-8

Signore v. City of McKeesport, 680 F.Supp. 200 (W.D. Pa. 1988),
    *aff'd*, 877 F.2d 54 (3d Cir. 1989) .............................................................................5

Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002) ............................................................15

Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) ............................................12

## Statutes, Rules and Other Authorities

Fifth Amendment to the U.S. Constitution .......................................................................16

Eighth Amendment to the U.S. Constitution .................................................................8,16

Eleventh Amendment to the U.S. Constitution.............................................................. 10-12

Fourteenth Amendment to the U.S. Constitution..............................................................1

Del. Const. Art. 1 §7 .......................................................................................................16

Del. Const. Art. 1 §11 .....................................................................................................16

42 U.S.C. §1983.................................................................................................... *passim*

42 U.S.C. §1985.................................................................................................................13

Federal Rule of Civil Procedure 8 ...................................................................................15

Federal Rule of Civil Procedure 12(b)(6) .........................................................................5

## NATURE AND STAGE OF THE PROCEEDINGS

At approximately 2:30 a.m. on September 4, 2005, Plaintiff was arrested on a number of criminal charges in connection with attempts to evade arrest, and driving his vehicle at a Delaware State Trooper, following a traffic stop on I-95 in Wilmington, Delaware.   On or about September 4, 2007, Plaintiff filed suit against the eight Delaware State Police Troopers. (Complaint, D.I. 1).  Four of these troopers--Corporal Andrew J. Hudak, Corporal/1 Steven T. Rizzo, Corporal/1 John P. Forester and Master Corporal Thomas E. Green (hereinafter collectively referred to as "Answering Defendants" or "Responding Troopers")--took part in effecting Plaintiff's arrest on the night in question.   The remaining four defendants--Colonel Thomas MacLeish, Lt. Colonel Mark W. Seifert, Major Joseph A. Papili and Captain Nate (Nathanial) McQueen (hereinafter collectively referred to as "Moving Defendants" or "Supervisory Defendants")--had no personal involvement in the events alleged, and are simply supervisors at various stages, all the way to the rank of Colonel, up the chain of command from the Responding Troopers.  Plaintiff asserts claims against all of the named defendants in their individual capacities.

In his Complaint, Plaintiff claims various violations of the United States and Delaware Constitutions, specifically substantive due process and equal protection deprivations under the Fourteenth Amendment, as well as Eighth Amendment claims (and their Delaware Constitutional equivalents), in connection with the events of September 4, 2005.

Following an Order to Show Cause (D.I. 4) on January 16, 2008, Plaintiff was granted an extension of time in which to effect service.  Plaintiff served the State Defendants on February 8, 2008.  (D.I. 6 – 13).  This Court, on March 24, 2008, granted State Defendants' Motion for an extension of time in which to respond to the Complaint until April 25, 2008.  (D.I. 15).  This is

1

the Supervisory Defendants' Opening Brief in support of their Motion to Dismiss Plaintiff's

Complaint.[1]

---

1 The Responding Troopers have filed an Answer to the Complaint concurrently with this Motion and Brief.

## STATEMENT OF FACTS

For purposes of a Motion to Dismiss, all facts alleged in Plaintiff's complaint are assumed to be true. Despite this, for the reasons discussed herein, Plaintiff fails to state a claim upon which relief can be granted as to any of the Moving Defendants.

Plaintiff alleges that, following a stop of his vehicle, at approximately 2:30 a.m. on September 4, 2005, by Defendant, Corporal Andrew Hudak, Trooper Hudak approached Plaintiff in his car with his weapon drawn, and immediately began screaming at him, uttering racial slurs and threats. Plaintiff, allegedly in fear for his life, drove off, and Cpl. Hudak fired four shots at Plaintiff's vehicle. None of these shots hit Plaintiff, but they did damage to his car. Plaintiff stopped his car a little further southbound on I-95 and ran out of the car on foot, running down an embankment and into the woods. Cpl. Hudak pursued Plaintiff to this second stop and had his gun drawn, shouting more threats, while Plaintiff was in the woods. Defendant, Corporal/1 John P. Forester arrived on the scene, followed by Defendant, Corporal/1 Steven Rizzo. Cpl. Rizzo allegedly drove his vehicle off the road and towards Plaintiff as he was exiting the woods to surrender. In an attempt to get out of the way, Plaintiff injured his right knee. Troopers Rizzo and Hudak allegedly used excessive force in taking Plaintiff to the ground, handcuffing him, and finally effecting his arrest. At this time, they also allegedly used more racial slurs and threats against Plaintiff. During the arrest, Hudak and Rizzo allegedly told Forester to turn off his in-car video camera, which he did.

Defendant, Master Corporal Thomas Green then arrived on the scene. He allegedly made false reports about the incident, including his arrival time and witnessing of the arrest. Finally, Plaintiff alleges that he had to wait three hours to be transported to the hospital for medical assistance for his knee.

3

Plaintiff alleges that a non-Defendant, Detective James P. Fraley, informed the Executive Staff of this incident on September 4, 2005 at approximately 12:10 p.m. (¶ 48) via a Daily Significant Event Report.  Thus, this notification took place approximately 10 hours after the pursuit and arrest.  The Executive Staff of Delaware State Police consists of the Colonel, the Lieutenant Colonel and the five Majors, thereby including Supervisory Defendants Colonel MacLeish, Lt. Colonel Seifert and Major Papili.  Plaintiff also asserts that Supervisory Defendant, Captain Nate McQueen, was also forwarded a copy of the Significant Event Report around 12:10 p.m.  Captain McQueen is not a member of the Executive Staff, but is in the supervisory chain of command of the Responding Troopers.

Plaintiff's allegations against the Supervisory Defendants are that they "knew or should have known all of the above events [actions of Responding Troopers] and failed to take action," thereby "conspiring" in deprivations of Mr. Frink's Constitutional rights. (¶49). Plaintiff also alleges the Supervisory Defendants are that they "knew or should have known of actions of employees whose actions were within their supervision and control."  (¶63).  Plaintiff alleges that all DSP Defendants "created a version of the events of September 4, 2005" which is inaccurate in an attempt to "cover up" wrongdoing.  (¶67).  Finally, Plaintiff claims that the actions of the DSP Defendants in general "were pursuant to a custom or practice of the Delaware State Police." (¶68).  These are Plaintiff's sole allegations against the Supervisory Defendants.

# ARGUMENT

## STANDARD OF REVIEW

The District Court should dismiss a complaint if, on its face, the plaintiff fails to state a claim upon which relief can be granted. F.R.C.P. 12(b)(6). The purpose of the motion to dismiss is to test the sufficiency of the allegations raised in the complaint. Baylis v. Taylor, ___ F.Supp. 2d ___, 2007 WL 590594 (D.Del. 2007) (*citing* Kost v. Kozakierwicz, 1 F.3d 176, 183 (3d Cir. 1993)). In considering a 12(b)(6) motion to dismiss, the well-pled factual allegations of the complaint must be accepted as true, and reasonable inferences drawn in favor of the plaintiff. Id. However, the Court should reject unsupported allegations, or sweeping legal conclusions cast in the form of factual allegations. *See* Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997); Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968 (8th Cir. 1968), *cert. denied*, 395 U.S. 961 (1969); Pauling v. McElroy, 278 F.2d 252 (D.C. Cir. 1960), *cert. denied*, 364 U.S. 835 (1960). Mere allegations, unsupported by facts, do not preclude dismissal and do not constitute a cause of action. Signore v. City of McKeesport, 680 F.Supp. 200, 203 (W.D. Pa. 1988), *aff'd*, 877 F.2d 54 (3d Cir. 1989).

Under these standards, the Plaintiff's complaint as to State Defendants MacLeish, Seifert, Papili and McQueen (Moving Defendants) must be dismissed because, even assuming Plaintiff's allegations to be true, the complaint fails as a matter of law to state a claim upon which relief could be granted by this Court against these Defendants in a §1983 action.

**I. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS TO THE MOVING DELAWARE STATE POLICE SUPERVISORY DEFENDANTS, AS THE COMPLAINT, ON ITS FACE, FAILS TO STATE ANY CAUSE OF ACTION AGAINST THEM UNDER 42 U.S.C. §1983.**

**A.    The Supervisory Defendants had no personal involvement in the acts complained of.**

It is axiomatic that to be subject to suit in an action brought pursuant to 42 U.S.C. §1983, a constitutional violation must be alleged on the face of the complaint as to each named defendant.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327 (1986).  Without establishing the existence of a Constitutional right and its violation, the plaintiff cannot state a claim upon which relief can be granted, and the action must be dismissed.  In the case of State actors, the existence of a "constitutional question" is the first prong of the qualified immunity test.  If no constitutional violation is pled, the inquiry is at end and the State official is entitled to immunity from suit.  Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002); Carswell v. Borough of Homestead, 381 F.3d 235, 240-42 (3d Cir. 2004). The Third Circuit, and the United States Supreme Court, have emphasized that qualified immunity--including determination of the validity of the constitutional claim--must be decided at the "earliest possible stage in the litigation."  Bennett, 274 F.3d at 136 (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991).

> "Qualified immunity is '*an entitlement not to stand trial* or face the other burdens of litigation.'" Id. (quoting Mitchell v. Forsyth, 472 U.S. at 526...). "The privilege is 'an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Id.

Bennett, *supra* (emphasis added).

It is well-settled that an "individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing..." in order to incur liability.  Baylis v. Taylor, *supra*, 2007 WL 590594 at *5 (*citing* Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.

2005); <u>Rode v. Dellaciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of plaintiff's constitutional rights." <u>Id</u>. The plaintiff must "allege and prove a causal connection between the [named] defendants and the alleged wrongdoing in order to recover." <u>Brathwaite v. Carroll</u>, 2006 WL 839385, *4, (D.Del. 2006)(*citing* <u>Rode</u>, *supra*). What this means is that more than conclusory allegations are required.

This Court has held that "a plaintiff must allege personal involvement *with particularity, stating the time, place and persons responsible for the violations.*" <u>Brathwaite</u>, *supra*, (*citing* <u>Boykins v. Ambridge Area Sch. Dist.</u>, 621 F.2d 75, 80 (3d Cir. 1980) (emphasis added). *See also* <u>Evancho</u>, *supra*, ("a civil rights complaint is adequate where it states the *conduct, time, place and persons responsible*") 423 F.3d at 353-54 (emphasis added). This is true even under the liberal notice pleading standard of F.R.C.P. 8(a). <u>Id</u>. Under this standard, it is plain that Plaintiff in the instant case does not state a claim for personal involvement in any civil rights violations, as to Defendants MacLeish, Seifert, Papili and McQueen, even accepting all of his allegations to be true.

Plaintiff, by his own recitation of the facts in his Complaint, admits that the Supervisory Defendants did not learn of the traffic stop, shooting, pursuit and arrest of Plaintiff until 12:10 p.m. on September 4, 2005, approximately 10 hours after the actual events which took place around 2:30 – 3:00 a.m. that morning. (Compl. ¶ 48). Thus, it is not possible that the Supervisory Defendants "directed, had actual knowledge of, or acquiesced in, the deprivation of plaintiff's constitutional rights" in connection with these events. <u>Brathwaite</u>, *supra*. Plaintiff does not allege, and there is no evidence to support, that any supervisor was actually at the scene of the arrest on I-95. There is, in fact, no allegation of *any* action whatsoever, toward Plaintiff,

on the part of the Moving Defendants, anywhere in the complaint. Plaintiff's bare allegation that the Supervisors "knew or should have known of actions" taken by the Responding Troopers during the arrest is refuted by his own admission that the Supervisors did not learn of the pursuit and arrest until long after it had taken place. Clearly, the Supervisory Defendants must be dismissed for lack of personal involvement.

### B. There is no *respondeat superior* liability on the Supervisory Defendants.

In keeping with the requirement of personal involvement needed to subject a defendant to trial for alleged civil rights violations, it is equally well-settled that a cause of action under §1983 will not sound against State defendants who function as supervisors based solely on *respondeat superior*. Parratt v. Taylor, 451 U.S. at 535; Monell v. Department of Social Services, 436 U.S. 658 (1978); Rode, *supra*; Evancho, *supra*. Civil rights plaintiffs routinely name supervisory State officials as defendants, but the case law is universal that such actors should be dismissed where no facts suggesting their *personal* involvement are pled. The fact that a State official may have responsibility for supervising others "is irrelevant" to the constitutional claim. Rode, 845 F.2d at 1208. The allegations must show that the named State official *personally* violated the rights of the plaintiff.

In Evancho, the Third Circuit upheld the dismissal of the former Pennsylvania Attorney General in a civil rights case in which the plaintiff failed to allege any facts (conduct/time/place/persons) linking the Defendant Attorney General to the claimed constitutional violations against her. Plaintiff claimed a retaliatory transfer of employment. The Court held that a claim was not stated against the AG, where she alleged no facts that he personally directed the transfer, or "knew of and acquiesced in it." 423 F.3d at 353-54. Rather, plaintiff's complaint "merely hypothesiz[ed] that [the AG] may have been somehow involved

8

simply because of his position as head of the Office...."  Id.  Such a conclusion, the Third Circuit held, was not a "reasonable inference."  Id.  See also Brathwaite, supra (District of Delaware dismissing Department of Correction officials where complaint alleged they were "on duty" during incident, but did not "link specific defendants to the complained of conduct").

Nor did the Third Circuit in Evancho accept plaintiff's argument that the case should await discovery to ferret out whatever evidence might or might not exist to support her conclusory allegations of wrongdoing.  "[A] court is not required to assume that a plaintiff can prove facts not alleged."  Id.  The Court concluded that the complaint was properly dismissed where plaintiff's allegations amounted to nothing more than "conclusory, boilerplate language insufficient to show that she is or may be entitled to relief if her claims are proven.  Id. at 354-55. In the same way, the complaint here contains nothing more, as to the supervisory defendants, than "conclusory, boilerplate language," that the defendants knew of or ratified the alleged violations against Plaintiff.  Certainly, any plaintiff can allege that any state official violated their rights in purely conclusory terms, but such bare allegations do not state a claim under §1983, and cannot be used to subject state officials to suit in their individual capacity, to the burdens of trial and, potentially, to personal liability.  See Bennett, supra.

As discussed above, the Complaint in the instant case fails to allege, as to Defendants MacLeish, Seifert, Papili and McQueen, that any of them took any actions personally which violated Plaintiff's civil rights.  The allegations against these Defendants, as in Evancho, are, at best, claims that they are liable for the alleged violations simply because of their job functions or supervisory responsibilities.  The only allegation as to the Supervisory DSP Defendants is that they were employed in their ordinary official activities of supervising personnel and operations. Indeed three of the four Supervisory Defendants are members of the Executive Staff and,

9

therefore, at the very top of the DSP chain of command.  Plaintiff expressly premises his claims against the Moving Defendants on their duty to "supervise" others.  (Compl. ¶63).  Any liability asserted against them for events which took place in this incident could only be premised on an impermissible *respondeat superior* theory.  Clearly, this is not sufficient to state a claim under §1983.

### C.   Plaintiff fails to state a claim for wrongful "practices and policies" which is a theory of municipal liability which cannot be maintained against State officials as a matter of law, by virtue of the Eleventh Amendment.

Plaintiff, alleging no specific facts, attempts to make a bare allegation of a wrongful "policy or custom" by DSP.  (Compl. ¶68).  Such a claim can not, as a matter of law, state a claim against any individual State Defendant, as it is legally barred by virtue of the State Defendants' Eleventh Amendment immunity, which bars claims in this court which are premised upon the actions of the State as a sovereign entity.

A "failure to train" or "policy/practice" claim is a claim brought against a governmental body.  It may be based upon the actions of an official who functions as the incarnation of the governmental body in his or her role as policymaker, but it is nonetheless a claim against the government itself.   Such a claim can be asserted in federal court against a municipal governmental entity, but *not* against a State agency or State actor.  *See* Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).   In Monell, the Supreme Court held that "Congress did intend *municipalities and other local government units* to be included among those persons to whom §1983 applies."  436 U.S. at 689 (emphasis added).  The Court's footnote to this holding clearly sets forth its recognition of the distinction between municipal liability and state government liability (or lack thereof) under §1983:

there [is no] basis for concluding that the Eleventh Amendment is a bar to

municipal liability. . . . Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes.

Id at 691, *fn.* 54; s*ee also* Id at 694 (holding that the policy/practice claim seeks relief for an injury for which "the *government as an entity* is responsible . . ." (emphasis added).

This limited holding in Monell makes sense, because matters of policy, custom and training are functions or actions belonging to the governmental entity itself, and not to individuals (at least not outside their official capacity as policy makers).[2]  A later U.S. Supreme Court case, elaborating on Monell, City of Canton v. Harris, held unequivocally that policy/custom claims are claims against the governmental *entity* only: "a municipality can be found liable under §1983 only where the municipality itself causes the constitutional violation at issue.  *Respondeat superior* or vicarious liability will not attach under §1983." 489 U.S. 378, 385.[3]  *See also* Carswell v. Borough of Homestead, 381 F.3d 235 (3d Cir. 2004) (failure to train is a violation of §1983 by the "municipality *itself*").

Thus, as this type of claim is one which sounds against the governmental entity itself, it follows that the entity in question must be subject to suit in the federal courts.  Unlike municipalities, *State* agencies are immune from suit under the Eleventh Amendment.  The DSP and its officials are therefore immune from suit under a "policy and practice" theory.  While Plaintiff has not identified any wrongful practice at all, nor linked the named Defendants to it, on the face of the complaint, even assuming *arguendo* that he had, the named DSP officials would have been acting in their official capacity as the alter ego of the Delaware State agency.  Just as

---

2  The Court in Monell took pains to note that the municipality could not be held liable on a *respondeat superior* theory for acts of an employee.  436 U.S. at 691.

3  *Accord* Canton at 389 (only where there is deliberate choice of failure to train "can *a city be liable*"); Id (city liable where "*municipal policy causes* a constitutional deprivation"); at fn. 7 ("*a city must exhibit* deliberate indifference . . . ").

no claim can be asserted against the agency itself by virtue of the Eleventh Amendment, no "policy and practice" claim can sound against the DSP defendants in their official capacity as policymakers for the agency.  *See* Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

### D. Plaintiff's Complaint fails, on its face, to state a claim for "conspiracy" against any State Defendant.

Plaintiff makes vague allegations that there was a conspiracy between the Supervisory Defendants and the Responding Troopers to "deprive[] Mr. Frink's Constitutional Rights." (Compl. ¶49).  As discussed above, Plaintiff fails to allege facts showing personal involvement on the part of any of the Moving DSP Defendants for any constitutional violation against Plaintiff.  Plaintiff's "conspiracy" claim also fails as a matter of law to state a claim upon which relief could be granted against any Defendant.  A litigant may not simply incant the word "conspiracy" to subject state officials—particularly solely supervisory officials--to suit.  "Certain claims [such as conspiracy to violate civil rights] are so easily made and can precipitate such protracted proceedings with such disruption of government functions that detailed fact pleading is required to withstand a motion to dismiss."  Burgess v. Burgess, 1993 WL 149995, *4 (N.D. Cal. 1993)(citing Angola v. Civiletti, 666 F.2d 1, 4 (2d Cir. 1981)).  In the Third Circuit, this requires pleading which, at a minimum, satisfies the "conduct, time, place, persons" requirements of Evancho, *supra*.  As with the substantive §1983 claims, adequate *factual* allegations must be pled as to elements of the alleged "conspiracy" in order for plaintiff to survive a motion to dismiss.  As with Plaintiff's substantive claims in this case, he fails on the face of the complaint to assert any factual allegations which would allow him to proceed against the Moving Defendants on a theory of "conspiracy."

Plaintiff's alleges that the Supervisory Defendants "knew or should have known all of the

above events [actions of Responding Troopers] and failed to take action.  This omission not only constituted a failure of their duties but joined them, as actors or co-conspirators with other defendants [the Responding Troopers] of the Delaware State Police to deny [Plaintiff] his U.S. Constitutional rights." (Compl. ¶49).

The Third Circuit has set forth the elements which must be pled to state a claim for §1983[4] "conspiracy":

> A civil conspiracy is [1] "a combination of two or more persons [2] acting in concert [3] to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is [4] an agreement between the parties [5] to inflict a wrong against or injury upon another and [6] an overt act which [7] results in damage.

Adams v. Teamsters Local 115, 2007 WL 142540, *4 (3d Cir. 2007)(citing Hampton v. Hanrahan, 600 F.2d 600 (7th Cir. 1979)[5], cited in Melo v. Hafer, 912 F.2d 628, 638 (3d Cir. 1990)) (numbering added).

On the face of the instant complaint, it is plain that none of the elements of civil conspiracy outlined above have been met.  First, it is not possible to commit a conspiracy, as Plaintiff alleges, by "omission."  Conspiracy requires, inter alia, an affirmative agreement and an overt act—neither of which can be established by acts of omission.  Plaintiff's assertion of the underlying constitutional violations is premised solely upon the early morning events of September 4, 2005, culminating in his arrest and alleged injury.  As discussed at length above, the facts alleged by Plaintiff himself make clear that no supervisory defendant had any knowledge of the arrest of Plaintiff either before or during the time it took place.  Accordingly, it is axiomatic that they could not have "conspired" to enable the constitutional violations.

---

4 Plaintiff does not plead nor allege facts which would encompass a claim for conspiracy under 42 U.S.C. §1985.
5 Hampton was overruled, on other grounds, in Hanrahan v. Hampton, 446 U.S. 754 (1979).  See Burgess v. Burgess, 1993 WL 149995 (N.D. Cal. 1993).

The complaint fails to allege that any of the named DSP defendants, including the supervisory defendants, ever engaged in *any* communications on the subject of Plaintiff. To state a claim for conspiracy to violate Plaintiff's civil rights, there must be, at a minimum, factual allegations that two or more persons [1] "acted in concert" [2], by agreement [4], to commit an unlawful act [3] and inflict a wrong against another (Mr. Frink) [5]. Once these elements are met, the named Defendant must commit an "overt act" to achieve the unlawful end. Here, that unlawful end is the excessive force allegedly used against Plaintiff in the early morning of September 4, 2005. As none of the Supervisory Defendants participated in the arrest, nor had prior knowledge of it, Plaintiff plainly cannot maintain a conspiracy claim against them. As discussed at length above, because there is no personal involvement in the pursuit and arrest of Plaintiff on the part of any Moving Defendant, no action is pled on the part of any moving defendant which would constitute an "overt act" toward the illegal end of excessive force. Plaintiffs' complaint entirely fails to state a claim for "civil conspiracy" against the DSP defendants. "[C]onclusory allegations of 'concerted action' without allegations of fact that reflect joint action, are insufficient to meet [the pleading] requirement." Adams, *supra* at *6 (citations omitted).

In Adams, the Third Circuit held that a defendant was properly dismissed where the only allegation pled in the complaint was that she conspired with the other defendants "to engage in the unlawful acts set forth above." Id at *7. This bare allegation is identical in substance to the assertion made here. The Third Circuit characterized such pleading as a "purely conclusory allegation that does not provide any facts that would permit a reasonable inference that [the defendant] conspired with any of the Appellees," which did not meet plaintiffs' burden of stating a claim for relief. Id. The Court upheld the dismissal, agreeing that, even under the liberal

14

pleading standard of F.R.C.P. 8:

> mere incantation of the words "conspiracy" or "acted in concert" does not talismanically satisfy the Rule's requirements.

Id (citation omitted).

Plaintiff's final claim against all defendants, including the Supervisory Defendants, is that they "created a version" of the events of September 4, 2005, which was incorrect "in order to cover up" the Responding Troopers alleged misconduct. In addition to Plaintiff offering no factual allegations as to any defendant that reports were falsified, Plaintiff fails as a matter of law to state a claim under §1983 for his allegations of an after-the-fact "cover up."

While of course a "cover up" of wrongdoing by police would be improper conduct (and would likely subject the offending officers to criminal penalties), it does not in itself constitute a deprivation of an individual plaintiff's constitutional rights (life, liberty, property) under §1983. "Even if . . . officers did file a false conduct report to cover up . . . excessive use of force, the filing of a false misconduct report does not, in itself, constitute a deprivation of a constitutional right." Baker v. Morgan, 2006 WL 1214808, *6 (E.D. Pa.2006) (citing Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)). In Baker, the District Court dismissed plaintiff's allegations that correctional officers and other uninvolved defendants engaged in a cover-up of an assault on him. As in Baker, Plaintiff here has not alleged that he suffered any constitutional deprivation as a result of the alleged "cover-up." Also, as noted above, not even the barest facts are pled as how the "cover up" was implemented and by whom. This claim also must be dismissed as to all DSP Defendants as it fails to state a claim under 42 U.S.C. §1983.

**II.     PLAINTIFF'S COMPLAINT DOES NOT STATE A CLAIM AGAINST THE MOVING DEFENDANTS FOR ANY VIOLATION OF THE DELAWARE CONSTITUTION, WHEN THESE ALLEGATIONS ARE PREMISED UPON THE SAME FACTS AS ARE PLAINTIFF'S FEDERAL CONSTITUIONAL CLAIMS.**

Plaintiff, in listing the violations allegedly committed against him, claims, in addition to federal Constitutional violations discussed above, that each Defendant violated his rights under the Delaware Constitution, specifically, Article I, Section 11 (the state law analogue of the Eighth Amendment of the United States Constitution), and Article I, Section 7 (the analogue of the Fifth Amendment).   Plaintiff's claims of State Constitutional violations are expressly premised on the same conduct (excessive force/due process) which allegedly constitutes the Federal Constitutional violations.   Thus, to the extent Plaintiff fails as a matter of law to state a claim for federal constitutional violations (as described above), he also necessarily fails to state a claim under the Delaware Constitution.   The Delaware Constitution, like the federal Constitution, requires the fundamental prerequisite of personal involvement in the alleged violations of law, which Plaintiff has not pled as to any Moving Defendant.   Accordingly, these state law claims must also be dismissed as to the Moving Defendants.

16

## <u>CONCLUSION</u>

Even accepting the allegations of Plaintiff's complaint as true, he has failed to state any claim, against any Moving Defendant, upon which relief could be granted.  For the foregoing reasons, Moving Defendants respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiff's complaint against them with prejudice.

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**


  */s/ Stephani J. Ballard*
STEPHANI J. BALLARD  (I.D. No. 3481)
Deputy Attorney General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendants

DATED:  April 25, 2008

17

## CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on April 25, 2008, she caused the attached ***Opening Brief in Support of Motion to Dismiss Complaint Filed by Defendants Thomas Macleish, Mark W. Seifert, Joseph A. Papili and Nate McQueen*** to be delivered to the following persons in the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT(S):**

> John O. Frink, Jr.
> 3700 North Market Street
> Wilmington, DE  19802

**MANNER OF DELIVERY:**

**\_\_\_\_\_**    One true copy by facsimile transmission to each recipient.

\_\_X\_\_    Two true copies by first class mail, postage prepaid, to each recipient.

**\_\_\_\_\_**    Two true copies by Federal Express.

**\_\_\_\_\_**    Two true copies by hand delivery to each recipient.

> _/s/ Stephani J. Ballard_
> Stephani J. Ballard, I.D. No. 3481
> Deputy Attorney General
> Carvel State Office Building
> 820 N. French Street, 6th Floor
> Wilmington, DE 19801
> 302-577-8400
> Attorney for Defendants