## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JOHN O. FRINK, JR.                          :
                                            :
                   Plaintiff,               :
                                            :
         v.                                 :         C.A. No. 07-00530-SLR-LPS
                                            :
ANDREW J. HUDAK,                            :
STEVEN T. RIZZO,                            :
JOHN P. FORESTER,                           :
THOMAS E. GREEN,                            :
                                            :
                   Defendants.              :

## REPORT AND RECOMMENDATION REGARDING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Andrew J. Hudak, Steven T. Rizzo, John P. Forester, and Thomas E. Green

have moved for summary judgment with respect to all claims in Plaintiff's complaint. (D.I. 31)

Plaintiff, John O. Frink, Jr., declined to file a response to the Defendants' Motion for Summary

Judgment. For the reasons set forth below, I recommend that the Court grant Defendants'

motion.

## BACKGROUND

### I.    Procedural Background

On September 4, 2007, Plaintiff, John O. Frink, Jr. filed a *pro se* Complaint against

Delaware State Police Troopers Nate McQueen, Thomas Macleish, Mark W. Seifert, Joseph A.

Papili, Andrew J. Hudak, Steven T. Rizzo, John P. Forester, and Thomas E. Green (collectively

1

referred to hereinafter as the "Troopers"). (D.I. 1)  Frink's Complaint alleges violations of 42

U.S.C. § 1983 against the eight Troopers. (D.I. 1)  Frink contends that four of the Troopers

(Hudak, Rizzo, Forester, and Green, collectively referred to hereinafter as the "Remaining

Defendants") participated in his arrest. (D.I. 1 ¶ 49)  He further alleges that the other four

Troopers (McQueen, Macleish, Seifert, and Papili, collectively referred to hereinafter as the

"Dismissed Defendants"), although not involved in his arrest, supervised the events surrounding

Frink's arrest. (D.I. ¶ 50)  Frink further alleges that all eight of the Troopers violated his rights

protected under the Constitutions of the United States and Delaware. (D.I. ¶ 54)

On April 25, 2008, the Remaining Defendants filed an Answer to Frink's Complaint.

(D.I. 18)  On that same date, the Dismissed Defendants filed a Motion to Dismiss for failure to

state a claim. (D.I. 16)  After Frink filed a brief opposing the Dismissed Defendants' Motion to

Dismiss (D.I. 22), I issued a Report and Recommendation recommending that the motion be

granted (D.I. 26).  On February 27, 2009, the Court adopted the Report and Recommendation,

granted the Dismissed Defendants' motion, and dismissed from the case Troopers McQueen,

Macleish, Seifert, and Papili. (D.I. 30)

The Remaining Defendants filed the instant Motion for Summary Judgment on August 5,

2009. (D.I. 31)  On September 1, 2009, I ordered that Frink file his answering brief by

September 15, 2009. (D.I. 34)  On September 16, 2009, Frink requested an extension of time to

respond to the pending motion, which I granted, providing Frink until November 2, 2009 to file

his brief. (D.I. 35)  When Frink again did not file an answering brief, I issued another order, this

time directing Frink to respond to the motion by January 4, 2010. (D.I. 36)  To date, Frink has

not filed an answering brief or any other materials relating to the Remaining Defendants' pending

motion.

## II.    Factual Background

The following factual background is based on Frink's allegations and the evidence in the record.  Where there are factual disputes, they are noted.

On September 4, 2005, at approximately 2:30 a.m., Frink was arrested on Interstate 95 in Wilmington, Delaware.  (D.I. 1 ¶ 10)  According to Defendant Hudak, Frink was driving 101 miles per hour, as recorded by a radar device.  (D.I. 33 at A4)  Frink admits that he had been driving in excess of the speed limit.  (D.I. 33 at A71)

As Defendant Hudak approached Frink's vehicle, he smelled alcohol inside the vehicle, and also noticed that the vehicle's gearshift remained in "drive."  (D.I. 33 at A4)  Frink admits that he had been drinking, consuming at least "[o]ne or two" beers.  (D.I. 33 at A71)  Frink alleges that Defendant Hudak approached his vehicle with his weapon drawn, "uttering ethnic slurs, profanity and threats."  (D.I. 1 ¶ 17)

Defendant Hudak has stated that upon approaching the vehicle, he asked Frink to put the car into "park," but Frink declined to do so; thereafter Frink's car rolled back toward Hudak. (D.I. 33 at A4)  Hudak was "unsure if the vehicle was in reverse" but "thought the vehicle was going to run him over and take off."  (D.I. 33 at A4)  Hudak then fired four rounds towards the vehicle and shouted for Frink to "stop the car."  (D.I. 33 at A5)  Frink did not heed Hudak's orders to stop.  (D.I. 33 at A5)  Frink alleges, and stated to the officers following his arrest, that he drove away because he feared for his life.  (D.I. 1 ¶ 18; D.I. 33 at A70)

After driving approximately .2 miles further down Interstate 95, Frink stopped on the shoulder of the road, exited his vehicle, and then ran into a wooded area and down a gully.  (D.I.

3

33 at A5)  When Defendant Hudak then approached Frink's vehicle, the gear shift was not in

"park," and it rolled back toward Hudak and his patrol car, eventually striking the patrol car.

(D.I. 33 at A5)  Defendant Hudak had called for back-up. (D.I. 33 at A5)  Defendants Forester

and Rizzo arrived on the scene and assisted Defendant Hudak in apprehending Frink.  (D.I. 33 at

A5)  Frink alleges that during the apprehension Defendants Hudak, Forester, and Rizzo were

screaming profanities and racial epithets and that he injured his ankle while running from them.

(D.I. 33 at A71)  Defendant Green arrived on the scene after Frink was apprehended, but before

Frink had been completely restrained.  (D.I. 33 at A63)

Frink was charged with Speeding, Reckless Endangering First Degree, Resisting Arrest,

Driving Under the Influence of Alcohol, Reckless Driving, Driving During Revocation, No Proof

of Insurance, Failure to Stop on Command, Failure to Obey Police, and Unsafe Backing.  (D.I. 33

at A86)

## LEGAL STANDARDS

A grant of summary judgment is appropriate only where "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c).  The moving party bears the burden of demonstrating the absence of a genuine issue of

material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10

(1986).  If the moving party has carried its burden, the nonmovant must then "come forward with

'specific facts showing that there is a *genuine issue* for trial.'"  *Id.* at 587 (quoting Fed. R. Civ. P.

56(e)) (emphasis in original).  The Court will "draw all reasonable inferences in favor of the

4

nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The Court may not grant summary judgment if a "reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 459 (3d Cir. 1989).

To defeat a motion for summary judgment, however, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. United States Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.") (internal quotation marks omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

When a litigant proceeds *pro se*, his submissions "are to be construed liberally and held to less stringent standards than [the] submissions of lawyers. If the court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [a] litigant's unfamiliarity with rule

requirements." *Kloth v. Southern Christian Univ.*, 494 F. Supp. 2d 273, 278 n.7 (D. Del. 2007), *aff'd* 320 Fed. Appx. 113 (3d Cir. Aug. 5, 2008).

## DISCUSSION

### A.    The Parties' Contentions

Frink's Complaint asserts claims pursuant to 42 U.S.C. § 1983 ("Section 1983"). (D.I. 1) Specifically, Frink alleges that the Remaining Defendants violated both the United States and Delaware Constitutions by depriving him of his rights to substantive due process under the Fourteenth Amendment of the United States Constitution and Article I section 7 of the Delaware Constitution; equal protection under the Fourteenth Amendment of the United States Constitution; and the right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution and Article 1 section 11 of the Delaware Constitution. (D.I. 1)

The Remaining Defendants assert multiple bases for seeking summary judgment. First, they contend that they had ample probable cause to arrest Frink, meaning there was no unlawful seizure in violation of Frink's Fourth Amendment rights. Second, they contend that there is no evidence they used excessive force in connection with Frink's arrest, meaning, again, there was no violation of Frink's Fourth Amendment rights. Finally, the Remaining Defendants assert that they are entitled to qualified immunity for their actions.

Having reviewed the record, I conclude that the Remaining Defendants are entitled to judgment as a matter of law. Although there are disputes of fact, they are not genuine or material, as the burden of proof is on Frink and he has failed to adduce evidence from which a

6

reasonable fact finder could conclude that the Remaining Defendants violated his rights in connection with his arrest. Therefore, the Remaining Defendants are entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

**B.    Fourth Amendment**

Section 1983 provides a cause of action for individuals who are deprived of a federal right by a state actor "under color of law." *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). It is undisputed that the Remaining Defendants, all of whom were law enforcement officers, were acting under color of law. *See Schwab v. Wood*, 767 F. Supp. 574, 580 (D. Del. 1991) (stating that Delaware state employees acting under state authority were considered to be acting "under color of state law."). The issue, rather, is whether they acted in violation of Frink's rights.

The "constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis." *Berg*, 219 F.3d at 269. "[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original; internal quotations omitted). Therefore, notwithstanding the Complaint's references to due process, equal protection, and the Eighth Amendment, all of Frink's claims against the Remaining Defendants are to be analyzed under the Fourth Amendment.

The inquiry into a Section 1983 violation that alleges an unconstitutional arrest involves three steps: (1) Was the person seized for Fourth Amendment purposes? (2) Did the seizure violate the Fourth Amendment? And (3) if the seizure violated the Fourth Amendment, is the

defendant nonetheless immune from liability? *See Berg*, 219 F.3d at 269.

Here, it is not disputed that Frink was seized for Fourth Amendment purposes, both during the traffic stop and again when he was apprehended after he fled from his vehicle. A seizure occurs when a government actor terminates an individual's freedom of movement through intentional means. *See Brower v. County of Inyo*, 489 U.S. 593, 595 (1989). Shooting at a suspect is a seizure because it impairs the suspect's freedom to leave the situation. *See id.* As such, Defendant Hudak seized Frink for Fourth Amendment purposes when he shot at Frink's vehicle following the initial traffic stop. Frink was seized again when he was apprehended after he fled from his vehicle. At this time, Defendants Hudak, Forester, and Rizzo intentionally terminated Frink's freedom of movement by arresting him. With respect to Defendant Green, taking the evidence in the light most favorable to Frink, the record establishes that Green was not present during Frink's apprehension, but did assist the other Remaining Defendants in restraining Frink after he was apprehended.

Turning to the second step of the Section 1983 analysis, the record does not contain evidence from which a reasonable fact finder could find that the Remaining Defendants violated Frink's Fourth Amendment rights during either seizure. An "objective reasonableness" standard is used to determine whether officers used excessive force in effecting an arrest. *Graham,* 490 U.S. at 388. This determination requires balancing the nature of the intrusion against the importance of the government's interests claimed to justify the intrusion. *See United States v. Place*, 464 U.S. 696, 703 (1983). Each case alleging excessive force must be evaluated under the totality of circumstances, paying careful attention to the facts and circumstances of the particular case. *See Graham*, 490 U.S. at 396. Reasonableness is determined at the time of the alleged

violation, not upon looking at the alleged violation with "20/20 hindsight." *Id.* The calculation

of reasonableness must include "allowance for the fact that police officers are often forced to

make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving –

about the amount of force that is necessary in a particular situation." *Id.* at 397.

It is undisputed that Defendant Hudak used deadly force – firing shots at Frink's vehicle –

in connection with the first seizure. While the use of deadly force to effect a seizure is

particularly intrusive, it is also sometimes essential to ensuring an effective arrest. *See Garner*,

471 U.S. at 9-10. In particular, if a suspect threatens a police officer with a weapon or the officer

has probable cause to believe the suspect has committed a crime with the use of "serious physical

harm," the officer may use deadly force "if necessary to prevent escape, and if, where feasible,

some warning has been given." *Id.* at 11-12. Here, even taking the evidence in the light most

favorable to Frink, the record establishes that Frink had been operating his vehicle at excessive

speed (perhaps in excess of 100 miles per hour), at 2:30 in the morning; his vehicle smelled of

alcohol and it appeared Frink had been drinking; and Frink failed to put his vehicle in "park"

when Officer Hudak approached and then suddenly backed his vehicle toward Officer Hudak,

before driving away. Officer Hudak's split-second judgment to use deadly force in these

circumstances – for self-defense; and to prevent the escape of a suspect who appeared to have

just committed a crime with the use of "serious physical harm;" and to protect other drivers from

an ongoing threat of serious physical injury or death – was not objectively unreasonable.

Defendants Hudak, Rizzo, Forester, and Green also did not violate Frink's Fourth

Amendment rights during the apprehension. By that point, the officers had probable cause to

arrest Frink on numerous criminal and traffic offenses, including Frink's apparent attempt to

injure Defendant Hudak by backing his vehicle toward Hudak. Frink had attempted to flee, both in his vehicle and on foot. While Frink sustained some injuries during the apprehension – his alleged injuries are strain, sprain and tear of the ligaments, cartilage and tendons in his right knee; a chipped elbow bone; back sprain, strain, and pain; and unspecified emotional and mental injuries (D.I. 1 ¶ 51) – there is nothing in the record to indicate that these were the result of excessive force.[1]

Given my conclusions, there is no need to reach the Remaining Defendants' additional argument that they are entitled to qualified immunity.

## RECOMMENDED DISPOSITION

Based on the foregoing analysis, I recommend that the Court **GRANT** the Remaining Defendants' Motion for Summary Judgment. (D.I. 31)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections **of no longer than ten (10) pages within fourteen (14) days after being served with a copy of this Report and Recommendation**. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 Fed.

---

[1] "[I]f a use of force is objectively reasonable, any bad faith motivation on the officer's part is immaterial." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003). Thus, even assuming there were evidence to support Frink's allegations that one or more of the Remaining Defendants repeatedly uttered racial slurs as they effectuated his arrest, the fact remains that Frink has failed to meet his burden to produce evidence from which a reasonable fact finder could conclude that the use of force here was objectively unreasonable.

10

Appx. 924, 925 n.1 (3d Cir. 2006). **A party responding to objections may do so within fourteen (14) days after being served with a copy of objections; such response shall not exceed ten (10) pages. No further briefing shall be permitted with respect to objections without leave of the Court.**

The parties are directed to the Court's Standing Order In *Pro Se* Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.

Dated: March 28, 2010
Wilmington, Delaware

The Honorable Leonard P.  Stark
UNITED STATES MAGISTRATE JUDGE